# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANTWAN DILLARD,             Case No. 1:13-cv-882
    Petitioner,

                                   Spiegel, J.
vs.                                  Bowman, M.J.

WARDEN, LONDON            **REPORT AND**
CORRECTIONAL INSTITUTION,[1]    **RECOMMENDATION**
    Respondent.

      Petitioner, an inmate in state custody who is currently incarcerated at the London Correctional Institution in London, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is before the Court on the petition and respondent's return of writ with exhibits, including the trial transcript. (Docs. 1, 11). Although petitioner was granted an extension of time in which to file a reply to the return of writ, he did not do so by the deadline date. (*See* Doc. 12). Therefore, the matter is ripe for disposition.

## I. PROCEDURAL HISTORY

### State Trial Proceedings

      In October 2011, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with two counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2) and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(3). (Doc. 11, Ex. 1). Firearm specifications were attached to the felonious assault

---

[1] In the petition, petitioner properly named the Warden of Warren Correctional Institution (WCI) as respondent, because petitioner was incarcerated at WCI at the time the action commenced. (*See* Doc. 1). Thereafter, petitioner filed a notice of change of address from WCI to London Correctional Institution (LoCI) in London, Ohio. (*See* Doc. 13). Because it thus appears that petitioner is now in the custody of the Warden of LoCI, the caption of the case is hereby changed to reflect that LoCI's Warden is the proper party respondent. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

charges. (*Id.*). The charges stemmed from a "drive-by shooting incident that occurred on Livingston Street in Cincinnati"; the incident involved two victims--"a male victim who was grazed by a bullet and a female victim who was not injured." (*See id.*, Ex. 10, Opinion, p. 1).[2] Petitioner was not the shooter, but was identified by the female victim, Natasha Lowery, as the driver of the car from which the shots were fired. (*See id.* & Ex. 3). According to the Bill of Particulars provided by the State to defense counsel, the shooting occurred on June 29, 2011 and was done in retaliation for the murder on June 25, 2011 of "a good friend" of the shooter and petitioner by Lowery's sister. (*Id.*, Ex. 3).

Petitioner waived his right to a jury trial. (*Id.*, Ex. 4). Following a bench trial, he was found guilty as charged. (*Id.*, Ex. 5). After a sentencing hearing held on January 20, 2012, the trial court issued a Judgment Entry on January 27, 2012, sentencing petitioner to an aggregate prison term of thirteen (13) years. (*Id.*, Ex. 6).[3]

## State Appeal Proceedings

With the assistance of new counsel for appeal purposes, petitioner pursued a timely appeal to the Ohio Court of Appeals, First Appellate District. (Doc. 11, Ex. 7). In the appellate brief filed by counsel on petitioner's behalf, petitioner presented three assignments of error:

1. The trial court erred to the prejudice of the Defendant-Appellant by finding him guilty of felonious assault and having weapons while under disability, as that finding was not supported by sufficient evidence.

---

[2] The Ohio Court of Appeals, First Appellate District, made the factual findings in its direct appeal decision filed September 5, 2012. (*See* Doc. 11, Ex. 10). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings, those findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

[3] Specifically, petitioner was sentenced to the following consecutive terms of imprisonment: eight (8) years for the felonious assault offense charged in Count 1 and five (5) years on a merged firearm specification attached to that count. (*See* Doc. 11, Ex. 6). Petitioner was also sentenced to an 8-year prison term for the felonious assault offense charged in Count 2 and a 3-year prison term for the weapons offense charged in Count 3, but those sentences were to be served concurrently with the sentences imposed for Count 1. (*See id.*).

    2.  The trial court erred to the prejudice of the Defendant-Appellant by finding him guilty of felonious assault and having weapons while under disability, as that finding was contrary to law.

    3.  The trial court erred to the prejudice of the Defendant-Appellant by not notifying him of the possibility that the court could order community service if he failed to pay his court costs.

(*Id.*, Ex. 8).

On September 5, 2012, the Ohio Court of Appeals issued a Judgment Entry and Opinion overruling petitioner's assignments of error challenging the sufficiency and weight of the evidence. (*See id.*, Ex. 10). However, the state appellate court sustained petitioner's third assignment of error, finding that the trial court had erred by failing to notify petitioner "of the possibility of court-ordered community service in lieu of paying costs, as required by R.C. 2947.23(A)(1)." (*Id.*, pp. 4-5). The court, therefore, vacated the portion of the trial court's sentencing judgment imposing court costs and remanded the matter to the trial court "to properly notify Dillard as required under R.C. 2947.23(A)(1) in conjunction with the imposition of costs." (*Id.*, p. 5).

Petitioner next pursued a timely *pro se* appeal to the Ohio Supreme Court from the portion of the Ohio Court of Appeals' direct appeal decision affirming the judgment of conviction and prison sentence. (*See id.*, Ex. 11). In his memorandum in support of jurisdiction, petitioner presented the following propositions of law:

    1.  Insufficient evidence.

    2.  The convictions are against the manifest weight of evidence.

    3.  Ineffective assistance of appellate counsel.

(*Id.*, Ex. 12).

On January 23, 2013, the Ohio Supreme Court "decline[d] to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4)." (*Id.*, Ex. 16).

3

**Application To Reopen Appeal**

On November 20, 2012, while his appeal was pending before the Ohio Supreme Court, petitioner filed a *pro se* application under Ohio R. App. P. 26(B) with the Ohio Court of Appeals, First Appellate District, requesting that the direct appeal be reopened based on the claim that his appellate counsel was ineffective for failing to raise five additional assignments of error on direct appeal. (*See* Doc. 11, Ex. 17). On February 7, 2013, the Ohio Court of Appeals denied the reopening application on the ground that petitioner had "failed to demonstrate a genuine issue as to whether he has a colorable claim of ineffective assistance of appellate counsel." (*Id.*, Ex. 19). Respondent states that petitioner did not pursue a further appeal to the Ohio Supreme Court in that matter. (*Id.*, Brief, p. 6).

**Motion for Acquittal Or New Trial**

On November 1, 2012, during the pendency of his appeal to the Ohio Supreme Court and prior to his resentencing in accordance with the Ohio Court of Appeals' remand order, petitioner filed a *pro se* motion for acquittal or new trial with the trial court. (Doc. 11, Ex. 20). Petitioner contended in the motion that the evidence was insufficient to support his convictions because no evidence was presented to establish that he possessed a firearm or shot at the victims and "neither the indictment nor the prosecution made any indication it was proceeding on complicity charges." (*See id.*). On January 2, 2013, the trial court overruled the motion without opinion. (*Id.*, Ex. 21). Respondent states that petitioner did not pursue an appeal from that ruling to the Ohio Court of Appeals. (*Id.*, Brief, p. 6).

**State Proceedings Regarding Resentencing**

It appears from the record that a resentencing hearing was held on or about January 11, 2013 in accordance with the Ohio Court of Appeals' remand order. (*See* Doc. 11, Exs. 22, 28). The judgment entry re-imposing court costs following notification under state statutory

4

requirements set forth in Ohio Rev. Code § 2947.23(A)(1) was filed on January 14, 2013. (*Id.*).

On April 23, 2013, petitioner filed a *pro se* notice of appeal to the Ohio Court of Appeals, First Appellate District. (*Id.*, Ex. 23). The state appellate court *sua sponte* dismissed the appeal because "the notice of appeal was not timely filed" and "appellant did not file a motion for delayed appeal." (*Id.*, Ex. 24). On May 3, 2013, petitioner filed a motion requesting leave to file a delayed appeal with the Ohio Court of Appeals. (*Id.*, Ex. 25). That motion was overruled on May 30, 2013 on the ground that "appellant has failed to provide sufficient reasons for failure to perfect an appeal as of right." (*Id.*, Ex. 26).

Respondent states that petitioner did not pursue a further appeal to the Ohio Supreme Court in that matter. (*Id.*, Brief, p. 6).

### Federal Habeas Corpus

Petitioner initiated the instant federal habeas action in December 2013. In his *pro se* petition, petitioner presents the following claim as the sole ground for relief:

> **Ground One:** Petitioner was denied due process to a fair trial based upon insufficient evidence and false testimony.
>
> **Supporting Facts:** State's key witness has a long history of lying and or fabricating information even while under oath. Judge disregarded this fact even knowing witness had nefarious motivations for implicating petitioner who had a credible alibi of his pregnant friend.

(Doc. 1, p. 5).

Respondent has filed a return of writ addressing the merits of petitioner's claim for relief. Respondent contends that petitioner has not demonstrated he is entitled to relief under the deferential standard of review that must be applied in this federal habeas proceeding. (*Id.*, pp. 7-14).

## II. OPINION

In Ground One of the petition, petitioner alleges that the evidence presented at trial was insufficient to establish beyond a reasonable doubt the essential elements of the felonious assault

5

and weapons offenses charged against him. (Doc. 1, p. 5). The ground for relief, which was raised as a claim of error on appeal to both the Ohio Court of Appeals and Ohio Supreme Court, was fairly presented to the state courts. Therefore, Ground One is subject to review on the merits in accordance with the standard of review set forth in 28 U.S.C. 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the

6

> record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court more recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, U.S. _, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, _ U.S. _, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a

7

claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals was the only state court to issue a reasoned decision addressing petitioner's claim challenging the sufficiency of the evidence. (*See* Doc. 11, Ex. 10). Before considering the claim's merits, the court provided the following summary of the evidence introduced at the bench trial by both the State and the defense in addressing the criminal charges brought against petitioner:

> Dillard's convictions arose from a drive-by shooting incident. . . . Two victims were involved in the incident: a male victim who was grazed by a bullet and a female victim who was not injured. The female victim identified Robert White as the shooter during a call to a 911 operator following the shooting, and she later identified Dillard as the driver of the car during an interview with a police officer. The male victim was unable to identify either the driver or the passenger who had fired the shots and was unable to identify White or Dillard in a police photo array. No physical evidence was found at the scene.
>
> At trial, the defense attorney attacked the credibility of the female victim. The female victim admitted in her trial testimony that she had lied about her name during the 911 call because she had a warrant out for her arrest. She also admitted that she had an earlier criminal conviction stemming from an incident where she had lied to police. Moreover, the female victim had served prison time for assault after shooting into the home of Dillard and his mother, and in the days before the drive-by shooting, the female victim's sister had allegedly shot and killed a friend of Dillard and White.

(*Id.*, p. 2). Citing only state case-law, the court went on to reject petitioner's assignment of error,

8

reasoning in pertinent part as follows with respect to the constitutional issue:

> In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. . . .
>
> Dillard's main argument attacking his convictions goes to the credibility of the female victim. In evaluating witness testimony, credibility is primarily for the trier of fact. . . . Therefore, after viewing the evidence in the light most favorable to the prosecution, we determine that a rational trier of fact could have found all the essential elements of felonious assault and having a weapon while under disability beyond a reasonable doubt. . . .

(*Id.*, p. 3) (citations to Ohio cases omitted).

The clearly-established standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). As the Supreme Court held in *Jackson*, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,*

9

443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318-19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher*, 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796-97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 1927 (2012); *Anderson v. Trombley*, 451 F. App'x 469, 474-75 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 1152 (2012). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned is convinced that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an unreasonable application of *Jackson*. It is clear from the record that the Ohio Court of Appeals' determination is not contrary to *Jackson*, as the state court properly employed the deferential standard of review enunciated in *Jackson* in addressing petitioner's claim. Moreover, it was reasonable for the Ohio Court of Appeals to conclude in applying that standard of review that sufficient evidence was presented at trial to support the trial court's finding that petitioner was guilty beyond a reasonable doubt on the felonious assault and weapons-under-disability charges.

The essential elements of the felonious assault offenses charged in the indictment (*see* Doc. 11, Ex. 1), which the State was required to prove beyond a reasonable doubt, were that petitioner "knowingly caused, or attempted to cause, physical harm" to Jimmy Swint (the "male victim") and Natasha Lowery "by means of a deadly weapon or dangerous ordnance, to wit: A FIREARM." *See also* Ohio Rev. Code § 2903.11(A)(2). The essential elements of the weapons offense charged in the indictment (*see* Doc. 11, Ex. 1) was that petitioner "knowingly acquired or had or carried or used a firearm" when he "was under indictment for, or had been convicted of a felony offense involving the illegal possession of, sale of, use of, administration of, distribution, or trafficking of any drug of abuse . . ., to wit: TRAFFICKING IN DRUGS, in the Hamilton County, Ohio Court of Common Please, Case No. B0808286, on FEBRUARY 10, 2009 and TRAFFICKING IN DRUGS, in the Hamilton County, Ohio Court of Common Pleas, Case No. B0804106, on FEBRUARY 10, 2009 and at the time, . . . had not been relieved from such disability pursuant to section 2923.14 of the Revised Code." *See also* Ohio Rev. Code § 2923.13(A)(3).

It is well-settled under Ohio law that a defendant charged with an offense "may be

11

convicted of that offense upon proof that he was complicit in its commission, even though the indictment is 'stated . . . in terms of the principal offense' and does not mention complicity." *State v. Herring*, 762 N.E.2d 940, 949 (Ohio 2002) (quoting Ohio Rev. Code § 2923.03(F)); *see also McDougald v. Warden, Lebanon Corr. Inst.*, No. 1:11cv790, 2014 WL 3536585, at *6 n.5 (S.D. Ohio July 16, 2014) (Spiegel, J.). *Cf. Harrington v. Warden, London Corr. Inst.*, No. 1:10cv751, 2012 WL 1143483, at *13 (S.D. Ohio Apr. 5, 2012) (Litkovitz, M.J.) (Report & Recommendation) ("Ohio and federal courts have expressly acknowledged that 'a defendant may be indicted for the commission of a substantive crime as a principal and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor without violating federal due process'") (quoting *Hill v. Perini*, 788 F.2d 406, 406-07 (6th Cir. 1986)), *adopted*, 2013 WL 5944193, at *7 (S.D. Ohio Nov. 5, 2013) (Beckwith, J.) (and cases cited therein) ("As Judge Litkovitz noted in her Report and Recommendation, the Ohio statute on complicity is substantially the same as federal law in that aiding and abetting is assumed to be a part of each criminal offense and need not be specifically charged in the indictment to put the defendant on notice that he could be convicted as an aider and abettor"); *State v. Keenan*, 689 N.E.2d 929, 946 (Ohio 1998) (in rejecting the defendant's contention that "because the trial court instructed on conspiracy, he should have been sentenced for conspiracy, not aggravated murder," the Ohio Supreme Court pointed out that the defendant was "not prosecuted for the substantive offense of conspiracy, but for aggravated murder" and that the jury "instructions properly permitted the jury to find him guilty of aggravated murder based on a finding that he conspired to commit aggravated murder, and therefore was complicit in the commission of the aggravated murder").

   Petitioner does not dispute that he was under a disability based on prior convictions for drug trafficking for purposes of establishing his guilt on the weapons-under-disability charge.

He has contended, however, that insufficient evidence was presented to establish beyond a reasonable doubt that he was involved in any drive-by shooting from which the charges of felonious assault and having weapons while under disability arose. (*See* Doc. 1, p. 5; Doc. 11, Ex. 8, p. 3 & Ex. 12, pp. 4-6).

The Bill of Particulars provided by the State to the defense during pretrial discovery made it clear that the charges against petitioner were based on his participation as an aider and abettor in the shooting incident to the extent that he was the driver of the car from which "Robert White (aka Goofy) did shoot at Natasha Lowery and did shoot Jimmy Swint through the open window of the vehicle." (*See* Doc. 11, Ex. 3). At the bench trial, Natasha Lowery testified on direct examination, and in accordance with the summary provided in the Bill of Particulars, that on June 29, 2011, she was sitting with her boyfriend, Jimmy Swint, outside a store "talking and drinking," when a "goldish looking car pulled up" and the "driver's side window came down." (*See id.*, Trial Tr. 38-41). Lowery stated that the driver stopped the car "on the other side of the street" from where she and Swint were sitting on a milk crate and bucket. (*Id.*, Trial Tr. 42). She said she "immediately" recognized petitioner, whom she called "Snotty-Nose T," as "the driver." (*Id.*, Trial Tr. 41, 43). Lowery further testified that "Goofy," who was a passenger in the car, "leaned over" petitioner, "said bitch, I got you," and then fired three to four shots at her and Swint. (*Id.,* Trial Tr. 41, 48). At that point, she and Swint "started running." (*Id.*, Trial Tr. 41). They ran through an alley to another street where someone was "flagged . . . down" to drive them to her sister's home in Price Hill. (*Id.*, Trial Tr. 42, 48). As soon as they entered her sister's home, they noticed that Swint was injured and called 911. (*Id.*, Tr. 49).

Lowery identified petitioner in the courtroom as the person she knew "as Snotty-Nose T." (*Id.*, Trial Tr. 44-46). She stated that she had known him all her life because they grew up in the same area of town. (*Id.*, Trial Tr. 44, 46-47). She testified that she had "no doubt" petitioner

13

was the driver of the vehicle. (*Id.*, Trial Tr. 47).  She also stated that she recognized and knew "Goofy" as well, in the "[s]ame way" she knew petitioner, and that she knew the two men were friends.  (*Id.*, Trial Tr. 47-48).  She told police that "Robert White was the shooter" in the 911 call.  (*Id.*, Trial Tr. 56-57).  Although Lowery did not mention petitioner's name in the 911 call, James Mathews, the Cincinnati police officer who was dispatched to Lowery's sister's house in response to that call, testified that when he arrived at the scene "within two minutes" time, Lowery, who was "upset" and "excited," told him that "Snotty-Nose T did it and Goofy did it." (*Id.*, Trial Tr. 80-81, 84-85).  David Gregory, another Cincinnati police officer involved in the investigation, testified that he also interviewed Lowery on June 29, 2011, when she was taken by Officer Mathews to the police station.  (*Id.*, Trial Tr. 105).  Gregory testified that Lowery told him in that interview that petitioner "was driving the vehicle; that Robert White was the passenger.  That he leaned across with a firearm, pointed it at her, said, I got you now, bitch, and fired shots, three or four shots."  (*Id.*, Trial Tr. 105-06).  Lowery confirmed from photographs that Gregory showed her of White and petitioner that White was "Goofy" and petitioner was "Snotty-Nose T."  (*Id.*, Trial Tr. 106).

Although Swint was unable to identify either the driver or the shooter because he was from another part of town (*see id.,* Trial Tr. 26), he corroborated Lowery's testimony regarding how the incident transpired.  Specifically, Swint witnessed the driver of a "goldish color car" pull up on the other side of the street from where he was sitting with Lowery and roll his window down; the passenger in the car then leaned over the driver while the car was stopped, pointed a gun out the window, said "bitch, I got you," and "started shooting rounds." (*Id.*, Trial Tr. 21, 28, 31-32).  Swint testified that he and Lowery "[t]ook off running" through the alley.  (*Id.*, Trial Tr. 21).  Swint stated that the shooter fired "three times" at them and that he was injured at some point during the incident when a bullet "grazed" him in his leg.  (*Id.*, Trial Tr. 21, 30, 32).  He

14

said he first realized he had been struck when Lowery noticed the injury at her sister's house. (*Id.*, Trial Tr. 30, 35). On cross-examination, when asked whether he was "sure" about what he heard, Swint affirmed that he had "heard gunshots" as well as what was said by the person "from inside the car." (*Id.*, Trial Tr. 30-31). When next asked "but did Natasha tell you what she heard and then you thought you heard the same thing?," Swint replied: "Nope." (*Id.*, Trial Tr. 31).

It was reasonable for the Ohio Court of Appeals to determine under the applicable standard set standard set forth in *Jackson*, 443 U.S. at 319, that after viewing all the witnesses' testimony in the light most favorable to the prosecution, a rational trier of fact could have inferred that Lowery and Swint were victims of a felonious assault in a drive-by shooting; that the offenses were committed by White, as the shooter, and petitioner, as the driver of the car; and that a firearm was in their possession during the commission of the felonious assault offenses for purposes of establishing guilt on the weapons-under-disability charge. It is conceded, as petitioner has pointed out, that Lowery was the only eyewitness to identify petitioner as the driver involved in the drive-by shooting. However, as the Ohio Court of Appeals correctly pointed out in considering petitioner's claim attacking the sufficiency of the evidence (*see* Doc. 11, Ex. 10, p. 3), to the extent that petitioner has contended that Lowery's testimony lacks credibility, that was an issue "for the trier of fact to decide," not the reviewing court. *See Jackson*, 443 U.S. at 318-19. It, therefore, was not unreasonable for the Ohio Court of Appeals to conclude that a rational trier of fact could have found all the essential elements of felonious assault and having a weapon while under disability beyond a reasonable doubt based on Lowery's consistent testimony, as corroborated by Swint, regarding the events that occurred on June 29, 2011.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief based on his sole claim for relief alleged in Ground One of the petition challenging the

sufficiency of the evidence supporting his convictions. Upon review of the trial transcript, and under the double-layer deferential standard of review that must be applied by this Court, the undersigned concludes that the Ohio Court of Appeals' determination that sufficient evidence was presented at trial to support petitioner's convictions is neither contrary to nor an unreasonable application of *Jackson*.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to petitioner's sole claim for federal habeas relief, which was addressed on the merits herein, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

s/Stephanie K. Bowman_____
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANTWAN DILLARD,                          Case No. 1:13-cv-882
    Petitioner

vs                                           Spiegel, J.
                                               Bowman, M.J.

WARDEN, LONDON
CORRECTIONAL INSTITUTION,
    Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc